And the last one is 5597, Hayes v. Garcia. So the first case for argument is Brewer. Is that right, Brewer v. Hall? Yes, Your Honor. Okay. Good morning, Your Honor. Steve Lathrop on behalf of Petitioner Ronald Brewer. May it please the Court. The Attorney General responds by saying that, making two points. The trial court's instruction to the deadlock jury here, it says, was not coercive. And second, this Court can't reach the merits or shouldn't reach the merits on habeas because the U.S. Supreme Court hasn't decided whether CalJIC 17.41.1 is constitutional. Therefore, there's no U.S. Supreme Court decision on point. But that's not correct. If we look at – there's ample U.S. Supreme Court authority for the proposition that the coercive statements by a trial judge to the jury may result in the denial of a fair trial and the denial of a constitutional right to due process. And that's in the very case that the Respondent cites in its brief, Loewenfeld v. Phelps, a 1988 decision by the U.S. Supreme Court. And it's also clear, as the Loewenfeld decision states, that in 1926, the U.S. Supreme Court decided Brasfield v. United States, in which it held – in which the U.S. Supreme Court upheld a reversal of a conviction where, as part of the instructions to a deadlock jury, the court – or not as part of the instructions, but as part of the inquiry, the court inquired as to the numerical division of the jury. Now, let's step back and take a look at what happened here as far as what coercive effect the supplemental instructions had on this jury in this case, because they were very damaging. You've got a situation here where we've got two felony offenses, counts one and two, and a misdemeanor count three. This is a – this is a retrial from a hung jury in a first trial. It was mistried. So this is the retrial. The jury is deliberating one day. I think they deliberated two, two and a half hours. They come in the next day to continue the deliberations, and they're – they're deadlocked. And they state – the juror foreperson says, look – and I think this is critical, and this was not discussed by the California courts in their opinions. Yesterday, the jurors – the foreperson says, yesterday the – that the – one of the jurors made a comment that would suggest that that juror is considering penalty. And, of course, you can't consider a penalty in a jury-settled strike. You can't consider a penalty in a guilt-based situation like this. I think it's interesting that the juror foreperson didn't mention that yesterday. In other words, didn't bring this – this, quote, misconduct to the judge's attention when it first arose, but waited until the jury is deadlocked. This is the obvious jury that's – one jury is holding out. It's 11-to-1 on one of the felony charges when the court inquired the Inter-American Division. It's 11-to-1 on count one, and it's 8-to-4 deadlocked on count two. And those – and the third is the misdemeanor. Of course, the three-strike law doesn't arise in connection with the misdemeanor. So it's quite important when you're deadlocked on counts one and two, those are the felonies. So I think what we see here is the very reason why the California Supreme Court said, you know, geez, we don't want trial courts in California giving this instruction any longer. And the reason is highlighted in this case. The foreperson doesn't present this issue of apparent jury misconduct to the trial court when it first occurs yesterday at the beginning of jury deliberations, what the jurors – what the foreperson says. Waits until the jury's deadlocked. Now the – now he's – now the foreperson's, you know, is reporting this alleged misconduct that occurred earlier, and then the trial judge instructs, you know, brings the jury in, what's the – you know, inquires into the numerical division, 11-to-1, finds out it's 11-to-1 on count one, it's 8-to-4 on count two, and then re-instructs the jury with 1741.1, and does not give an outline charge, does not instruct significantly, does not tell the minority jurors in that case, minority view jurors, to not relinquish a firmly held belief simply to join with the majority and reach a verdict. And I think that what that gets us to in this case is that in viewing whether the – the re-giving of 1741.1, which was given twice, actually, during jury deliberations – so it was given three times initially and twice again – the re-instructing of 1741.1, with the inquiry into the numerical division of this jury, coerced a jury verdict. The U.S. Supreme Court has said that that's a denial of due process. Are you arguing then that the instruction is inherently unconstitutional for all cases or only under the circumstances of your particular case? The latter, Your Honor. May it please the Court. Donald DeNicola for the Warden. I think the notion that this instruction is unconstitutional either on its face or in the circumstances of this case is really too elusive and speculative to reach the standard that the AEDPA requires, which is that habeas corpus relief can't be granted unless the State court opinion was an unreasonable application or contrary to clearly established United States Supreme Court precedents. There really isn't anything in United States Supreme Court precedents that would support the view, let alone dictate the view, that this instruction is unconstitutional. What about as applied, though? I mean, there is a Supreme Court law that says you can't coerce a jury. Yes. And I think in terms of the AEDPA, the question then would be was it objectively unreasonable for the State court to say that this instruction under these circumstances did not coerce the jury. It seems to me that a lot of counsel's argument this morning is premised on the elicitation of the numerical division. That's a somewhat different argument than an attack on this instruction in the context of this case. On top of that, the request by the judge to ask for the numerical division did not occur until after the judge had called the jury out and had reread them the instruction. Third, I would say, the instruction itself doesn't bear the hallmarks of the types of instructions that might be deemed coercive. It's not an instruction that's aimed at its face to the minority jurors. And it doesn't ask them to reach any particular verdict. It's a neutral instruction on its face. And all it does is ---- Roberts, you know, it tells the jurors to like to snitch on any dissenting juror. Isn't that the effect of it? No, I don't think so. I don't think that ---- well, it could be aimed either even at a juror in the majority. I mean, a juror in the minority could make the same complaint if jurors in the majority are not or are expressing an intention not to follow the law. So in that sense, I think it does not qualify for something, for an instruction that would be aimed at the jury. And therefore, there would at least be a reasonable basis for the State court to say that the ---- that any coercive juror case law from the Supreme Court was distinguishable here. Well, you say it's neutral, but the ---- my understanding is the California Supreme Court itself is now counseled against using this instruction. Excuse me? The California Supreme Court is now counseled against using this instruction. Yes, that's right. Yes. Although they were careful to say it wasn't a matter of constitutional law. But if it's such a neutral instruction, what could be motivating the California Supreme Court? The California Supreme Court's explicit reason for saying that the instruction shouldn't be given was that they thought that it unnecessarily risked intruding on the privacy of the jury deliberations. I don't think there was anything in the California Supreme Court opinion that would suggest that the California Supreme Court thought that this instruction was not neutral with respect to the people and the defendant. And again, under the ---- especially under the AEDPA, the unconstitutionality of the instruction has to be so clear that it would be objectively unreasonable for a state court to say that in these circumstances it wasn't unconstitutional and on these facts, even on these facts, where nothing happened other than the instruction getting reread to the jury. This is not a case, as has shown up in some of the other case precedents, where the judge even questioned the jurors, let alone removed the jurors. All the judge did was reread the instruction. And if this instruction is unconstitutional, I think it kind of follows that even if a juror took it upon himself to properly bring to the judge's attention misconduct by a jury, by another juror, I think we'd have to follow that the courts would not be allowed to take any action, not even inquire into it. This instruction is a much more mild admonition that doesn't venture across the line of even questioning the jurors, let alone removing them. So there's really no pedigree in U.S. Supreme Court cases that would either dictate or prevent a State court from upholding conviction under these circumstances. Thank you. Roberts. All right. Thank you. Mr. Butler. Just briefly, Your Honors. On experts of record at page 30, the report and recommendation, the magistrate quotes in footnote 6, this is ER 30, the California Supreme Court. And this is what the California Supreme Court has said in Engelman in part. There is a risk that the instruction will be misunderstood or that it will be used by one juror as a tool for browbeating other jurors. And that's what happened here. This juror didn't – the foreperson didn't come forward when this comment was made at the beginning of juror deliberations the previous day and say, look, Your Honor, we've got a problem here. I'm going to report misconduct because, you know, one juror is possibly considering and waits until the following day. The jury has been deliberating three days. Why is he waiting until the jury's deadlock? He's using it to browbeat. You know, jury's deadlocked. They want to go home. You've got a minority view juror holding on. And now it's time to bring this forward. Look, Your Honor, you know, we're deadlocked. And by the way, this one juror possibly is what the note said, made a comment yesterday at the beginning of deliberations that suggests he may be considering penalty. And then a weight of the court comes down on this juror when all the jurors are pulled back into court. I'll submit it. Thank you. Roberts. Okay. Thank you. We thank both counsel. Case is submitted for decision.
judges: T.G. Nelson, Tashima, Fisher